IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07cv76
(3:04cr304)

| | |
|---|---|
| DARRELL EUGENE DIGSBY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Doc. No.1); the Government's Answer and Motion for Summary Judgment (Doc. Nos. 8 and 9); Petitioner's Response to the Government's Motion for Summary Judgment (Doc. Nos. 13 and 14) and Cross-Motion for Summary Judgment (Doc. No. 20); and Petitioner's Motion for release on his own recognizance (Doc. No. 21). For the reasons stated below, the Court will deny Petitioner's Motion to Vacate, Cross-Motion for Summary Judgment, and Motion for release on his own recognizance, and grant the Government's Motion for Summary Judgment.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was originally indicted on November 16, 2004, for possessing a firearm after having been convicted of a prior felony, in violation of 18 U.S.C. § 922(g)(1). (Case No. 3:04cr304, Doc. No. 1: Indictment).[1] Petitioner's indictment stemmed from his arrest on July 26,

---

[1] The indictment was superseded to list an additional felony conviction. (Case No. 3:04cr304, Doc. No. 17).

2004, at the home of Ray Davis, Yolanda Larkin, and Qunzina Dillard, his estranged girlfriend. Officers Cook and Ignaczak of the Charlotte-Mecklenburg Police had arrived at the Davis home in response to a "call for service" to investigate reports of shots fired in the area. (Doc. No 8-6: Gov. Ex. 5 at 15). Once inside, the officers arrested Petitioner as the suspected shooter and performed a search of the house, finding a firearm in the freezer.

On December 15, 2004, Petitioner filed a motion to suppress evidence, arguing that Officers Cook and Ignaczak's entry and search of the Davis home violated his Fourth Amendment rights. (Case No. 3:04cr304, Doc. No. 7). On January 25, 2005, a magistrate judge conducted a hearing. Petitioner's sister testified that in spite of the home address that Petitioner gave to Officers Cook and Ignaczak at his arrest, which belonged to their mother, Petitioner actually paid rent to live at the Davis home with Dillard, his estranged girlfriend. (Case No. 3:04cr304, Suppression Tr. at 50-51, filed February 28, 2005). The Government presented testimony from Davis's landlord, who testified that Petitioner was neither a lessee nor a lawful resident of the property. (Id. at 4-9). Petitioner elected not to testify.

Following the hearing, the magistrate judge filed a Memorandum and Recommendation ("M&R") finding that Petitioner's motion should be denied because he had failed to establish a privacy interest in the Davis home. (Case No. 3:04cr304, Doc. No. 14 at 5). In his Objection to the magistrate's M&R (Case No. 3:04cr304, Doc. No. 15), Petitioner submitted a sworn affidavit asserting, inter alia, that: (1) although Petitioner's name was not on the lease, he had rented a bedroom from Davis for himself and Dillard to occupy; (2) on the night in question, he arrived at home and discovered Dillard with another man, Ronald Logan; (3) he assaulted Logan but did not possess or draw a firearm; and (4) neither he nor any other residents consented to a search of

the kitchen, where police found the firearm. (Id. at 41-42). On April 1, 2005, the Court entered an Order adopting the M&R and denying Petitioner's motion to suppress evidence. (Case No. 3:04cr304, Doc. No. 26).

Petitioner proceeded to trial before a jury on April 6, 2005. The Government presented testimony from Officers Cook and Ignaczak; Nancy Kearns, a fingerprint expert; and Jon Rich, Special Agent with the Bureau of Alcohol, Tobacco and Firearms. By these witnesses the Government sought to prove Petitioner's illegal entry into the Davis home, his possession of the firearm, and the firearm's travel in interstate commerce. Additionally, Petitioner stipulated that he had at least one qualifying predicate felony conviction for purposes of 18 U.S.C. § 921(a)(20), such that he was prohibited from carrying a firearm under § 922(g)(1). (Case No. 3:04cr304, Trial Tr. Vol. 1 at 85-86, filed July 11, 2005).

Petitioner presented evidence from Elizabeth Patel, a forensic expert employed by the North Carolina State Bureau of Investigation; Michelle Helbig, a Charlotte-Mecklenburg Police Officer Crime Scene Investigator; and Tyrell Adams, the individual who had originally purchased the firearm seized from the Davis home. Through these witnesses, Petitioner established that no fingerprints were found on the firearm, he had no gunshot residue on his hands, and that Adams was the record owner of the firearm at the time of the instant offense. (Id. at Vol. 1, 87-89, 90-95, and Vol. 2, 104-05). After deliberation, the jury convicted Petitioner of violating 18 U.S.C. § 922(g)(1). (Case No. 3:04cr304, Doc. No. 36: Verdict).

On June 22, 2005, the U.S. Probation Office prepared a revised Pre-Sentence Report ("PSR") recommending that Petitioner's offense level under the advisory United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") be increased four levels pursuant to §

3

2K2.1(b)(5)[2] for possessing the prohibited firearm in connection with other felony offenses, i.e., the assault of Logan and burglary of the Davis home. (Case No. 3:04cr304, PSR at ¶ 16). Petitioner objected to the increase, claiming that he had not committed the additional violations. (Id. at p. 17). At Petitioner's sentencing hearing, the Government presented testimony from Officer Cook, who stated that his interviews with witnesses revealed that Petitioner had armed himself and broken into Davis's home by "slipp[ing] the lock with a key," and that once inside the home, Petitioner had threatened to kill Logan and Dillard, striking Logan in the head with the firearm. (Case No. 3:04cr304, Sent'g Tr. at 15-20). Petitioner recounted the facts he swore to in his affidavit submitted pursuant to his motion to suppress evidence. (Id. at 28-33). The Court found by preponderance of the evidence that Petitioner was subject to the four-point increase, overruled his objections (Id. at 34), and sentenced him to 120 months' imprisonment. (Case No. 3:04cr304, Doc. No 43: Judgment).

Petitioner timely appealed his case to the Fourth Circuit, arguing that this Court: (1) violated his Fourth Amendment rights by denying his motion to suppress the firearm; (2) violated his Due Process rights by limiting its remedy for the possibility that the jury saw him in custody and shackles; (3) violated Rule 403 of the Federal Rules of Evidence by requiring him to stipulate to a prior conviction before excluding the criminal history information alleged the Indictment, rather than bifurcating the trial; (4) violated his Confrontation Clause right under the Sixth Amendment by admitting hearsay evidence; and (5) erroneously rejected his proposed jury instruction concerning the jurisdictional requirement of 18 U.S.C. § 922(g)(1). Digsby, No. 05-

---

[2] In 2006, the United States Sentencing Commission amended U.S.S.G. § 2K2.1 so that subsection (b)(5) is now (b)(6).

4

4895, slip op. at 6-7. Petitioner also argued that these errors, in the aggregate, violated his Fifth Amendment right to a fair trial. Id. at 7 n.1. The Fourth Circuit rejected all of Petitioner's claims, holding that this Court properly denied Petitioner's motion to suppress for lack of privacy interest and properly admitted the testimony at issue as non-hearsay. Id. at 7, 10. Petitioner's conviction and sentence were affirmed, his petition for rehearing en banc was later denied, and the United States Supreme Court denied his petition for certiorari. United States v. Digsby, 549 U.S. 878 (2006) (Mem.).

Petitioner then filed the instant § 2255 motion, arguing that: (1) his former counsel had subjected him to numerous instances of ineffective assistance; (2) Officers Cook and Ignaczak's search of the Davis home violated his Fourth Amendment rights; (3) the four-level enhancement under U.S.S.G. § 2K2.1(b)(5) violated his Sixth Amendment right to a jury trial; and (4) his Indictment contained misleading information, violating his right to Due Process. (Doc. Nos. 1-3: Motion at 13-20 and 1-4: Motion at 11-14 ). The Government filed an Answer and Motion for Summary Judgment, arguing that Petitioner is entitled to no relief on any of his claims. (Doc. Nos. 8 and 9). Petitioner filed a Response to the Government's Motion for Summary Judgment (Doc. No. 13), supplementing it on July 9 (Doc. No. 14), essentially re-hashing his earlier arguments but also attempting to set forth new allegations. Later, Petitioner filed a Cross-Motion for Summary Judgment in which he also attempts to raise new claims for relief. (Doc. No. 20).[3]

---

[3] In the supplement to Petitioner's Response (Doc. No. 14), he raises the following new claims: (1) his prior convictions are facts which had to be proven under Apprendi v. New Jersey, 530 U.S. 466 (2000); (2) his counsel should have raised that argument; and (3) he was not given sufficient notice that he was subject to a four-point offense level enhancement under U.S.S.G. § 2K2.1(b)(5). (Id. at 2-3). In Petitioner's Cross-Motion for Summary Judgment (Doc. No. 20), he raises the following new claims as grounds for summary judgment: (1) the Court lacked subject matter jurisdiction over his case because his indictment did not include a penalty provision; (2)

5

Finally, Petitioner also filed a Motion seeking his release on his own recognizance pending resolution of the instant Motion to Vacate. (Doc. No. 21).

II. DISCUSSION

A. Standard of review

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If the motion is not dismissed after this initial review, a court must direct the Government to respond. Id. A court then reviews the Government's answer and any additional materials submitted by the parties— including affidavits—to determine whether an evidentiary hearing is necessary. Rule 8(a). A district court may dismiss a petitioner's claim without an evidentiary hearing when the pleadings and additional materials submitted by the parties conclusively show that a petitioner is not entitled to relief on any of his § 2255 claims. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

---

his counsel was ineffective for failing to raise this challenge; (3) he could not have been convicted under 18 U.S.C. § 922(g)(1) because state law had restored his civil rights according to § 921(a)(20); and (4) he was erroneously sentenced as a "career criminal" under United States v. Begay, – U.S. –, 128 S. Ct. 1581 (2008). (Id. at 1-4, 9-10). These claims should have been included through a motion to amend Petitioner's original § 2255 Motion to Vacate, see, e.g., United States v. Pittman, 209 F.3d 314, 316 (4th Cir. 2000), and because Petitioner failed to do so, these new claims are procedurally improper. Although the Court is often obliged to grant a pro se litigant leave to amend his complaint, see Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978), the Court is not required to entertain a repeated and flagrant violation of procedure, or grant leave to amend when doing so would be futile. Steinburg v. Chesterfield County Planning Comm'n, 527 F.3d 377, 390 (4th Cir. 2008). Because Petitioner fails to move for or articulate a basis compelling leave to amend his Motion to Vacate, and the Court sees no merit in any of these new claims, they will receive no further consideration.

Furthermore, summary judgment for the Government is appropriate when the pleadings and additional materials, viewed in the light most favorable to the petitioner, present no genuine issues of material fact that could lead a rational trier of fact to find that the petitioner is entitled to relief. See United States v. St. Germain, 76 F.3d 376, 1996 WL 43578, at *1 (4th Cir. Feb. 5, 1996) (unpublished) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) in applying standard for summary judgment in a § 2255 proceeding). Following a review of the entire record in the light most favorable to Petitioner, the Court finds that no genuine issue of material fact exists such that a rational trier of fact could determine that Petitioner is entitled to relief on any of his claims; thus, a hearing is not required, Petitioner's Motion to Vacate will be denied and dismissed, and summary judgment will be granted in favor of the Government.

B. Ineffective Assistance Claim

Petitioner sets forth a laundry list of grounds upon which he alleges ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of State of Maryland, 956 F.2d 1290, 1297-99 (4th Cir. 1992). When alleging ineffective assistance at trial, a petitioner cannot establish prejudice simply by asserting that but for counsel's errors, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, Strickland prejudice only exists if the "result of the proceeding was fundamentally unfair or unreliable." Id. (quoting Lockhart v. Fretwell, 506

U.S. 364, 369 (1993)). Indeed, Petitioner must show a probability that counsel's alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (internal quotations and citations omitted). A petitioner bears the burden of proving Strickland prejudice, and in its absence a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290.

        1.        Many of Petitioner's allegations of ineffective assistance of counsel are so vague, conclusory, or plainly inconsistent with the trial transcript that they may be summarily dismissed.

Allegations of ineffective assistance must point to specific conduct or errors that fall below an objective standard of reasonableness; "vague, conclusory, or palpably incredible" allegations unsupported by pleaded facts are insufficient to prevent summary judgment or warrant an evidentiary hearing. Machibroda v. United States, 368 U.S. 487, 495 (1962); see also United States v. Roane, 378 F.3d 382, 400-01 (4th Cir. 2004) (holding that "airy generalities" and "conclusory assertions" will not prevent summary judgment) (internal quotations omitted). Moreover, an evidentiary hearing is unnecessary when the trial transcript is available to show that the petitioner's allegations are patently false. Cf. Fulton v. Brown, 865 F.2d 1257, 1989 WL 1104, at *1 (4th Cir. Jan. 6, 1989) (unpublished) (requiring an evidentiary hearing when the petitioner's claims cannot be resolved by the trial record, citing Machibroda, 368 U.S. at 494-95).

Many of Petitioner's allegations of ineffective assistance of counsel are so conclusory or vague that the Court is unable to discern how Petitioner could claim they meet either prong of the Strickland test.[4] Other allegations of counsel's conduct are plainly inconsistent with the trial

---

[4] Among these are Petitioner's allegations that counsel was ineffective for: (1) failing to properly investigate and present substantial evidence; (2) failing to confront witnesses; (3) failing to object to or impeach Officer Cook's testimony; (4) failing to challenge the Government's

8

transcript.[5] As such, the Court may summarily dismiss these allegations without an evidentiary hearing. Machibroda, 368 U.S. at 495; Roane, 378 F.3d at 400-01; Fulton, 1989 WL 1104, at *1.

        2.        None of Petitioner's remaining allegations of ineffective assistance of counsel warrant an evidentiary hearing.

Petitioner's remaining allegations of ineffective assistance of counsel are as follows: (1) that counsel failed to hire a private investigator to locate various eyewitnesses; (2) that counsel failed to introduce a 911 Call Sheet tending to impeach Officers Cook and Ignaczak's testimony; (3) that counsel erroneously advised him not to testify at trial; and (4) that counsel evidenced a

---

(Note 4 cont.)
theory of the case; (5) failing to strike a jury member who had a family member in law enforcement; (6) failing to object to the transfer of Petitioner's case from Judge Mullen's Court to this Court for sentencing; (7) failing to argue that Petitioner had not been found guilty beyond a reasonable doubt because a juror, during deliberation, asked to view evidence; (8) failing to introduce evidence that Logan had not been assaulted with a firearm; and (9) failing to "confront" Petitioner's prior convictions which were somehow—according to Petitioner—based on indictments alleging that Petitioner possessed the same firearm as the one confiscated pursuant to the instant conviction. (Doc. No. 1-3: Motion at 13-16). Missing from each of these allegations of ineffective assistance are pleaded facts that explain them or establish either prong of the Strickland test.

[5] Petitioner alleges that counsel failed to object to the introduction of hearsay during the testimony of Officers Cook and Ignaczak. (Doc. No. 1-3: Motion at 13) The trial record reflects, however, that counsel made multiple hearsay-based objections to the introduction of this testimony at Petitioner's trial. (Trial Tr. Vol. I at 18-20). Petitioner also alleges that counsel failed to introduce evidence that negated Petitioner's possession of the firearm. (Doc. No. 1-3: Motion at 16). Again, the trial records reflects that Nancy Kearns, a fingerprint expert, testified to the absence of any fingerprint evidence. (Case No. 3:04cr304, Trial Tr. Vol. 1 at 77). Counsel also introduced Ms. Ramseur's laboratory report reflecting that she did not find any fingerprints on the firearm, bullets or magazine. (Id. at Vol. 2, 118). Counsel further introduced testimony from Michelle Helbig and Elizabeth Patel, each of whom testified to the absence of gunshot residue on Petitioner. (Id. at Vol. 1, 87-92). Finally, Counsel subpoenaed Tyrell Adams, who testified that he, not Petitioner, had purchased the firearm in 2000 and was the record owner at the time of Petitioner's arrest. (Id. at Vol. 1, 104-05). Moreover, counsel argued these points to the jury. (Id. at Vol. 2, 134). When compared with the trial transcript, it becomes clear that both of these allegations about counsel's performance are unsubstantiated.

9

conflict of interest through his dealings with Qunzina Dillard, a potential witness. (Doc. No. 1-3: Motion at 13-16).

        a.        Counsel's failure to locate various eyewitnesses

Petitioner alleges that counsel was ineffective for failing to hire an investigator to locate various eyewitnesses and subpoena them in order to corroborate Petitioner's narrative of the material facts in controversy. (Doc. No. 1-3: Motion at 14). Petitioner lists the following as material witnesses who were not subpoenaed to testify: "Mr. Ardrey Davis, Mr. Ronald Everett Logan, Miss Qunzina Latoya Dillard, Miss Yolanda Larkin, Miss Charise Nicole Sanders, [and] Miss Clara Jean Mingo (Davis)." (Id.).

On this point, the affidavit submitted by Petitioner's counsel outlines the efforts he made in trying to locate the persons who were at the Davis home on the night of the incident, proceeding without the aid of police investigatory powers (Doc. No. 8-9: Michel Affidavit at ¶ 16). Counsel tried to locate these individuals by conducting background and criminal records checks, even traveling to South Carolina to obtain court documents. (Doc. No. 8-9: Michel Affidavit at ¶¶ 24, 38). Counsel intended to call some of these witnesses at trial (Case No. 3:04cr304, Doc No. 24: Witness List), but could not locate them in time. In the case of Qunzina Dillard, counsel was able to speak with her before the trial, but states that she did not provide adequate contact information to later subpoena her, nor would he have necessarily called her to testify if she had. (Doc. No. 8-9: Michel Affidavit at ¶ 30).

Counsel's Affidavit further indicates that although he did not hire a private investigator, he expended reasonable effort trying to locate the witnesses on his own. Importantly, Petitioner's

affidavit (Doc. No. 20-1) does not directly dispute any of these additional facts.[6] Thus, Petitioner's allegation that counsel failed to hire an investigator, when evaluated against the entire record, does not create a genuine issue of fact of whether counsel's performance in this regard fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688.

The Court also notes that even if counsel had produced these witnesses at trial, Petitioner has not made any showing that their testimony was likely to corroborate his theory of the case. Petitioner does not claim that these witnesses would have exonerated him; he merely claims that they had personal knowledge of the events surrounding his arrest. (Doc. No. 1-3: Motion at 14). In fact, at least some of these witnesses would have delivered testimony that was likely damaging.[7] Thus, even if Petitioner's allegations could establish that counsel's performance was constitutionally deficient, his claim would still fail for lack of prejudice. Fields, 956 F.2d at 1290.

b. Counsel's failure to introduce the 911 Call Sheet

Petitioner also alleges that counsel failed to introduce the 911 Call Sheet, a record kept by the Charlotte-Mecklenburg Police Department, from the night of his arrest. Petitioner argues that the Call Sheet lacked a notation for a 911 call reporting shots fired in the vicinity of the Davis home, thereby undermining Officers Cook and Ignaczak's testimony that they were in the area to

---

[6] In his own Affidavit, Petitioner swears that he has never seen any of "the state court criminal records which defense counsel claims he obtained in his Affidavit . . . ." (Doc. No. 20-1: Digsby Affidavit at ¶ 10). This is not a contradiction of the facts alleged in counsel's Affidavit.

[7] For example, eyewitness Ronald Logan gave a statement to Officers Cook and Ignaczak on the night of Petitioner's arrest that Petitioner had assaulted him with a firearm. (Doc. No. 8-6, Government's Ex. 5 at 28).

investigate a report of shots fired. (Doc. No. 1-3: Motion at 15). Petitioner is correct in the sense that counsel did not introduce the Call Sheet at trial. (Case No. 3:04cr304, Doc. No. 25: Defendant's Exhibit List). Counsel states in his affidavit, however, that he submitted the 911 Call Sheet to the magistrate judge for his consideration shortly after Petitioner's suppression hearing. (Doc. No. 8-9: Michel Affidavit at ¶ 27). Petitioner submitted for inclusion into the record of this matter a letter written by counsel to the magistrate judge that corroborates counsel's sworn statement. (Doc. No. 1-3 at 5-8). And although counsel could have introduced the Call Sheet again at trial, his decision not to fails to establish ineffective assistance. Officers Cook and Ignaczak never claimed that they were in the vicinity of the Davis home on the night in question in response to a 911 call; they reported responding to a "call for service." (Doc. No 8-6: Gov. Ex. 5 at 15). Thus, the Call Sheet does not necessarily impeach either officer's testimony. Petitioner cannot, therefore, establish either prong of the Strickland test by alleging counsel's failure to introduce the 911 Call Sheet at trial as an exhibit. Fields, 956 F.2d at 1290.

      c.   Counsel's advice for Petitioner not to testify

Petitioner complains that counsel was ineffective for advising him not to testify on his own behalf. (Doc. 1-3 at 14). Petitioner's counsel states in his affidavit that Petitioner chose not to testify in order to avoid exposing his criminal history to the jury. (Doc. No. 8-9, Michel Affidavit at ¶ 49). Petitioner's criminal history included prior convictions for: (1) assault with a deadly weapon with intent to kill or inflict serious injury; (2) armed robbery; (3) possession with intent to sell and deliver cocaine; and (4) assault with a deadly weapon. (Case No. 3:04cr304, PSR at ¶¶ 29 and 31). If Petitioner had testified in his own defense, the Government could have cross-examined him under Rule 609 of the Federal Rules of Evidence about the existence of

these prior convictions. Petitioner's counsel determined that any potential benefit of Petitioner's testimony would have been outweighed by the introduction of his criminal history. This decision fell squarely within the wide range of reasonable representation. Strickland, 466 U.S. at 689; Fields, 956 F.2 at 1297-99.

                d.        Counsel's alleged conflict of interest concerning Qunzina Dillard

Petitioner alleges that counsel evidenced a conflict of interest by asking Qunzina Dillard, a potential witness, to call the prosecuting attorney, and failing to obtain Dillard's phone number prior to the trial. (Doc. No. 1-3: Motion at 14). Counsel swears in his affidavit that on February 23, 2005, he received a call from Dillard during which she refused his request to provide her contact information, explaining that she was in the process of changing addresses and obtaining her own phone number. (Doc. No. 8-9: Michel Affidavit at ¶ 30). Counsel further avers that he advised Dillard of the upcoming trial date, Petitioner's desire to have her testify, and suggested that she contact the case agent, not the prosecutor. (Id.). Moreover, counsel's Affidavit suggests that he likely would not have used Dillard as a witness because he did not believe that she could help Petitioner's case. (Id.).

The Sixth Amendment protects against an actual conflict of interest that adversely affects counsel's representation. United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991) (citing Cuyler v. Sullivan, 446 U.S. 335, 356 (1980)). In cases where such a conflict exists, prejudice to the defendant is assumed. Id. "More than a mere possibility of a conflict, however, must be shown. The Sixth Amendment is implicated only when the representation of counsel is adversely affected by an actual conflict of interest." Id. (emphasis in original). Even if true, Petitioner's allegations would not establish an actual conflict of interest, for the conduct alleged is not

13

necessarily inconsistent with counsel's duty of loyal representation. Nowhere in Petitioner's pleadings is it explained how counsel sought to serve an interest other than Petitioner's by failing to obtain Dillard's phone number or asking her to call the prosecuting attorney. Nor does Petitioner allege why counsel asked Dillard to call the prosecuting attorney, or Dillard actually did call the prosecuting attorney, and if she did, what was discussed. Because he has not done so, Petitioner's allegation fails to establish that counsel labored under an actual conflict of interest. Cuyler, 446 U.S. 335, 356 (1980)).

In sum, the Court has reviewed the entire record in the light most favorable to Petitioner and finds no genuine issue of material fact such that a rational trier of fact could determine that Petitioner is entitled to relief on any of his claims of ineffective assistance of counsel. Thus, the Government is entitled to summary judgment on these claims, and an evidentiary hearing is not required. St. Germain, 1996 WL 43578, at *1.

C.  Fourth Amendment Claim

Petitioner's second claim alleges that the search of the Davis home and the seizure of the firearm violated his Fourth Amendment rights. (Doc. No. 1-3 at 17). Filing an appeal "forecloses relitigation of issues expressly or impliedly decided by the appellate court." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993). Accordingly, issues previously decided on direct appeal cannot be recast in the form of a § 2255 motion. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under Section 2255."). If the § 2255 claim is substantively similar to a claim previously rejected on direct appeal, the defendant must point to some subsequent change in the law that has since made the claim viable. Davis v. United States, 417

U.S. 333, 342 (1974); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) ("Because the Defendants have not pointed to any change in the law that warrants our reconsideration of these claims, . . . they cannot relitigate these issues.") (citing Boeckenhaupt, 537 F.2d at 1183).

Here, Petitioner's instant Fourth Amendment claim is substantively identical to the Fourth Amendment claim that he unsuccessfully pursued on direct appeal. See Digsby, supra, slip op. at 7-8. Petitioner points to no change in Fourth Amendment jurisprudence—nor is the Court otherwise aware of one—that compels a different result than denial of Petitioner's claim for lack of privacy interest. Thus, Petitioner's claim is barred from collateral review in a § 2255 proceeding. Davis, 417 U.S. at 342; Roane, 378 F.3d at 396 n. 7.

D.  Sixth Amendment Claim

Petitioner next alleges that the Court erroneously subjected him to a four-level sentence enhancement for possession of a firearm in relation to another felony offense under Guidelines § 2K2.1(b)(5). (Doc. No. 1-4: Motion at 11). In support, Petitioner appears to argue that his enhancement violated his Sixth Amendment rights under Apprendi v. New Jersey, 530 U.S. 466 (2000), because it was based upon the Court's finding of facts not alleged in his Indictment nor found by a jury beyond a reasonable doubt.

At the outset, Petitioner's claim is procedurally defaulted because it could have been, but was not, raised on direct appeal. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998). To collaterally attack a conviction or sentence based upon errors that could have been, but were not, pursued on direct appeal, a petitioner must show either cause for failing to appeal and actual

prejudice resulting from the errors complained of, or that he is actually innocent. United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)).

Here, Petitioner failed to raise this claim on direct appeal, although he could have done so. Even if the Court were to construe Petitioner's Motion to allege cause to excuse procedural default under his previous claim of ineffective assistance of counsel, the Court has addressed this claim in Part B, supra, and finds it wholly without merit. Thus, Petitioner cannot establish cause and prejudice to excuse default, nor does he plead with sufficient detail that he is actually innocent of the enhancement under § 2K2.1(b)(5).[8] As a result, Petitioner's failure to raise this claim on direct review precludes its collateral review here. Mikalajunas, 186 F.3d at 492-93.

The Court notes additionally that even if Petitioner could establish that he is actually innocent of the § 2K2.1(b)(5) enhancement at issue in this case, the Fourth Circuit does not recognize the "actual innocence" exception for challenges to sentencing enhancements under the Guidelines outside of "eligibility for application of a career offender or other habitual offender guideline provision." Mikalajunas, 186 F.3d at 495. Section 2K2.1(b)(5) only increases the offense level under the Guidelines, placing it outside the narrow exceptions to the rule announced in Mikalajunas. Thus, even if Petitioner could assert actual innocence of the firearm enhancement, his claim would still fail as a matter of law.

---

[8] In his affidavit, Petitioner states that he is "actually and factually innocent of the charges I stand judicially convicted of by a jury of my peers." (Doc. No. 20-2: Digsby Affidavit at ¶ 8). This lone statement is insufficient to allege actual innocence, which must be shown by clear and convincing evidence. Mikalajunas, 186 F.3d at 493 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).

E.   Due Process Claim

Finally, Petitioner challenges his conviction on the ground that his Indictment contained misleading information in violation of his right to Due Process. (Doc. No. 1-4: Motion at 13-14). Even laboring under its duty to construe Petitioner's pleadings liberally, see Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978), the Court is unable to discern from Petitioner's pleadings exactly how his Indictment was misleading. Apparently, Petitioner's misapprehends that the indictments related to his prior offenses contained an allegation that he possessed the same firearm alleged in the instant Indictment. (Doc. No. 1-4: Motion at 14). Even if true, this could not have confused the jury because none of the indictments or convictions for the prior offenses were ever shown to the jury. (See Case No. 3:04cr304, Doc. No. 33: Government's Ex. List). This claim fails as a matter of law because Petitioner has not alleged a claim for relief that is comprehensible. Furthermore, even if it were comprehensible, this claim is procedurally barred because it could have been, but was not, raised on direct appeal. See Part D, supra.

III.  CONCLUSION

After reviewing the entire record in the light most favorable to Petitioner, the Court finds no genuine issues of material fact such that a rational trier of fact could find that Petitioner is entitled to relief on any of his claims.

**IT IS, THEREFORE, ORDERED** that:

1.   The Government's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**;

2.   Petitioner's Motion to Vacate (Doc. No. 1) is **DENIED** and **DISMISSED**;

3.   Petitioner's Cross-Motion for Summary Judgment (Doc. No. 20) is **DENIED** as moot; and

4. Petitioner's Motion for release on his own recognizance (Doc. No. 21) is also **DENIED** as moot.

Signed: January 6, 2010

Robert J. Conrad, Jr.
Chief United States District Judge